# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1425 | **DATE** | 7/12/2004 |
| **CASE TITLE** | Lawrence W. Falbe vs. Dell, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Dell's motion to stay these proceedings and compel arbitration [6-1] is granted. The parties are hereby ordered to proceed to arbitration in accordance with the arbitration provision in the Terms and Conditions, and further, to notify this court within 21 days of the completion of the arbitration proceedings. **ENTER MEMORANDUM OPINION.**

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | | |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 1 4 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 7/12/2004 | | |
| | | U.S. DISTRICT COURT CLERK | date mailed notice | | |
| KM | courtroom deputy's initials | 2004 JUL 13 PM 5:03 | KM | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LAWRENCE W. FALBE,                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )      No. 04-C-1425
                                      )
DELL INC.,                            )      DOCKETED
                                      )
            Defendant.                )      JUL 1 4 2004

## MEMORANDUM OPINION

Before the court is defendant's motion to stay proceedings
and compel arbitration pursuant to the Federal Arbitration Act, 9
U.S.C. §§ 1, *et seq.*  For the reasons set forth below, the motion
is granted.

## BACKGROUND

The following facts are drawn from the parties' motion
papers, including attached exhibits and affidavits.[1]  Plaintiff
Lawrence Falbe purchased a computer from defendant Dell over the
telephone on or around May 25, 2003.[2]  Falbe received the computer

---

[1]Because a motion to compel arbitration is, in effect, an
assertion that this court is deprived of subject matter jurisdiction
during the pendency of the arbitration, see Jacobsen v. J.K. Pontiac
GMC Truck, Inc., No. 01 C 4312, 2001 WL 1568817, at *1 n. 1 (N.D. Ill.
Dec. 10, 2001), we may look beyond the pleadings and motion papers to
submitted evidence in deciding the motion.  See Capitol Leasing Co. v.
Federal Deposit Ins. Corp., 999 F.2d 188, 191 (7th Cir. 1993).

[2]Dell products are available over the telephone, through its
website or directly through a Dell sales agent.

on May 28, 2003. Enclosed with the computer was a copy of Dell's standard "Terms and Conditions of Sale."[3] The Terms and Conditions' first page of text stated:

> Please read this document carefully!
> It contains very important information
> about your rights and obligations,
> as well as limitations and exclusions
> that may apply to you. This document
> contains a dispute resolution clause.
>
> This Agreement contains the terms and
> conditions that apply to purchases by
> . . . customers from the Dell entity
> named on the invoice ("Dell") that will
> be provided to you ("Customer") on orders
> for computer systems. . . . By accepting
> delivery of the computer systems, other
> products, and or services and support
> described on that invoice, Customer
> agrees to be bound by and accepts these
> terms and conditions. If for any reason
> Customer is not satisfied with a Dell-
> branded hardware system, Customer may
> return the system under the terms and
> conditions of Dell's Total Satisfaction
> Return Policy, which is located on-line at
> www.dell.com/us/en/gen/misc/policy_010_policy.htm
> or may be found in the documentation
> accompanying the system.

(Def.'s Mot., Ex. A1, "Terms and Conditions of Sale," p. 3.) A copy of Dell's "Total Satisfaction Return Policy" was in fact enclosed with Falbe's computer. The Policy provided, in relevant part:

> If you are an end-user customer who
> bought new products directly from a Dell

---

[3] The Terms and Conditions were also printed on the reverse side of the invoice sent to Falbe, and were available on Dell's website or by telephone request.

> company, you may return them to Dell
> within 30 days of the date of invoice
> for a refund or credit of the product
> purchase price.
>
> *      *      *
>
> You must also prepay shipping charges
> and insure the shipment or accept the
> risk of loss or damage during shipment.

(<u>Def.'s Mot.</u>, <u>Ex. A2</u>, "Total Satisfaction Return Policy," p. 7.)

The Terms and Conditions set forth two additional provisions that are relevant to this motion. First, it included a choice-of-law provision:

> Governing Law. THIS AGREEMENT AND ANY
> SALES THEREUNDER SHALL BE GOVERNED BY
> THE LAWS OF THE STATE OF TEXAS, WITHOUT
> REGARD TO CONFLICTS OF LAW RULES.

(<u>Def.'s Mot.</u>, <u>Ex. A1</u>, p. 4, ¶ 2.)

Second, it contained an arbitration provision:

> Binding Arbitration. ANY CLAIM, DISPUTE,
> OR CONTROVERSY (WHETHER IN CONTRACT, TORT,
> OR OTHERWISE . . .) AGAINST DELL . . .
> arising from or relating to this
> Agreement, its interpretation, or the
> breach, termination, or validity thereof,
> the relationships which result from this
> Agreement . . . Dell's advertising, or
> any related purchase SHALL BE RESOLVED
> EXCLUSIVELY AND FINALLY BY BINDING
> ARBITRATION ADMINISTERED BY THE NATIONAL
> ARBITRATION FORUM. . . .

(<u>Id.</u>, p. 7, ¶ 13.)

Several months after receiving the computer, in December 2003, Falbe brought this action against Dell in Illinois state

court. The complaint alleges violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 5-5/1, *et seq.* (Count I), breach of contract (Count II), unjust enrichment (Count III) and common law fraud (Count IV). Each count is based on the same allegation: Dell misrepresented to Falbe the procedure for obtaining a $200 mail-in rebate on his computer purchase.[4]

Dell demanded that Falbe voluntarily dismiss his complaint and pursue arbitration pursuant to the arbitration provision in the Terms and Conditions. When Falbe failed to respond, Dell properly removed the action to this court and filed the present motion to stay proceedings and compel arbitration.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("the FAA" or "the Act") allows a party to invoke a district court's authority to enforce an arbitration agreement by compelling the reluctant party to arbitrate a dispute. See 9 U.S.C. § 4. Our threshold inquiry is whether the FAA applies.[5]

---

[4]Specifically, the Complaint states that "Defendant implemented a system where consumers would purchase a certain computer under the assumption they were receiving a $200 mail-in-rebate, when in fact, the rebate materials were not delivered with the computer, could only be obtained by the consumer on-line, and had a 30 day time limit of which Defendant did not notify the consumer." (See Not. of Removal, Ex. A, Compl., p. 1, ¶ 1.).

[5]Actually, our *first* question is whether we have subject matter jurisdiction over this action. The FAA itself does not grant federal question jurisdiction; rather, "there must be diversity of citizenship or some other independent basis for federal jurisdiction" to compel arbitration under the Act. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765

The Act provides:

> A written provision in any maritime
> transaction or *a contract evidencing*
> *a transaction involving commerce* to
> settle by arbitration a controversy
> thereafter arising out of such contract
> or transaction . . . shall be valid,
> irrevocable, and enforceable, save upon
> such grounds as exist at law or in
> equity for the revocation of any
> contract.

9 U.S.C. § 2 (emphasis added).  Because the transaction at issue

involved interstate commerce – a Delaware corporation with its

principal place of business in Texas sold a computer to an Illinois

citizen – the arbitration agreement in the Terms and Conditions is

governed by the FAA.  See Allied-Bruce Terminix Cos. v. Dobson, 513

U.S. 265, 273-77, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (the FAA's

"involving commerce" requirement should be read broadly to extend

to the limits of Congress' Commerce Clause powers).[6]

Under sections 3 and 4 of the Act, when there is a valid

arbitration clause, the court must grant a request for a stay and

---

(1983).  This court has diversity jurisdiction because Dell and Falbe
are citizens of different states and the amount in controversy exceeds
$75,000.  See 28 U.S.C. § 1332.

[6]Although neither Dell nor Falbe raise the issue (both assume,
without discussion, that the FAA applies), it is worth noting that the
choice of law provision in the Terms and Conditions requiring the
application of Texas law does not affect our conclusion that the FAA
governs.  See Northern Illinois Gas Co. v. Airco Indus. Gases, 676
F.2d 270, 274-75 (7th Cir. 1982) ("Notwithstanding the parties' choice
of law provision in their contract calling for application of Illinois
law, and irrespective of the fact that this is a diversity case,
federal arbitration law governs the analysis of arbitration provisions
in any contract evidencing a transaction in interstate commerce.").

direct the parties to proceed to arbitration. See 9 U.S.C. §§ 3 &
4. Before taking these steps, we must resolve two related
questions: (i) whether the parties entered into a valid and
enforceable agreement to arbitrate, and if so, (ii) whether the
present claims fall within the scope of that agreement. See AT&T
Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649,
106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

## A.    Existence of a Valid Arbitration Agreement

Whether the parties entered into a valid arbitration
agreement is a matter of contract law, see R.J. O'Brien & Assocs.,
Inc. v. Pipkin, 64 F.3d 257, 260 (7th Cir. 1995), and we apply
ordinary state law principles of contract formation. See First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct.
1920, 131 L.Ed.2d 985 (1995). Our first inquiry is a choice of law
question - which state's contract law applies? Dell summarily
argues that Texas law controls under the choice of law provision in
the Terms and Conditions. Falbe is silent on the issue, but by his
citations, appears to be lobbying for Illinois law. In the end, as
Dell points out, because Texas and Illinois have both adopted the
Uniform Commercial Code, either state's law would yield the same
result on the issue of whether there exists an agreement to
arbitrate.[7] Nonetheless, we will briefly explain why it is that

_____

[7]Section 2-204 of the UCC provides: "A contract for sale of goods
may be made in any manner sufficient to show agreement, including
conduct by both parties which recognizes the existence of such
contract." See also Tex. Bus. & Com. § 2.204; 810 ILCS § 5/2-204.

Texas law applies.

District courts exercising diversity jurisdiction must apply the choice of law rules of the forum state to determine what substantive law governs the case. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Illinois's choice of law rules, which follow the Restatement (Second) of Conflicts (1977), an express choice of law provision will be given effect provided: (i) it does not contravene Illinois public policy, and (ii) the state chosen bears a reasonable relationship to the parties or the transaction. See Potomac Leasing Co. v. Chuck's Pub, Inc., 156 Ill.App.3d 755, 509 N.E.2d 751, 753-55 (1st Dist. 1987). We discern no "public policy" obstacle to enforcement of the choice of law provision, and are satisfied that Texas, as the principal place of Dell's business, bears a reasonable relationship to the parties and the transaction in this case. Accordingly, the choice of law provision controls and we will apply Texas (or UCC) law to the issue of whether a valid agreement to arbitrate exists.

The relevant facts are not in dispute. Falbe received copies of both the Terms and Conditions and the Return Policy with his computer. The Terms and Conditions clearly advised Falbe that "[b]y accepting delivery of the computer, . . . Customer agrees to be bound by and accepts these terms and conditions." (Def.'s Mot., Ex. A1, p. 3.) The Terms and Conditions included a mandatory

arbitration provision. Under the Return Policy, Falbe could have
returned the computer for a full refund within thirty days. (<u>See</u>
<u>Id.</u>, <u>Ex. A2</u>, p. 7.) He opted not to do so. These facts, according
to Dell, give rise to an enforceable agreement to arbitrate: "terms
and conditions shipped with computer equipment that are not
rejected and returned by the purchaser within a specified time
period are binding. . . ." (<u>Def.'s Mot.</u>, p. 5.) Falbe contends
otherwise, arguing that he did "not engage[] in any affirmative
conduct in which he consented to the arbitration provision in the
Terms and Conditions. He did not sign the Terms and Conditions or
represent to Defendant he accepted the terms and conditions."
(<u>Pl.'s</u> <u>Resp.</u>, p. 3.)

Our analysis begins, and could end, with the Seventh
Circuit's decision in <u>Hill v. Gateway 2000, Inc.</u>, 105 F.3d 1147
(7th Cir. 1997). In <u>Hill</u>, plaintiffs had purchased a computer from
defendant by telephone. Arriving with the computer was a list of
terms, including an arbitration clause, said to govern unless the
computer was returned within 30 days. More than 30 days later,
plaintiffs brought suit based on defendant's warranty, and
defendant petitioned to compel arbitration. The Seventh Circuit
held, expressly applying UCC § 2-204, that once plaintiffs kept the
computer beyond the return date, they had accepted the terms of the
contract. <u>See</u> 105 F.3d at 1150. The Court explained:

> A vendor, as master of the offer, may
> invite acceptance by conduct, and may

> propose limitations on the kind of
> conduct that constitutes acceptance.
> A buyer may accept by performing the
> acts the vendor proposes to treat as
> acceptance.
>
>         \*       \*       \*
>
> Customers as a group are better off
> when vendors skip costly and ineffectual
> steps such as telephonic recitation, and
> use instead a simple approve-or-return
> device.  Competent adults are bound by
> such documents, read or unread. . . .
>
> By keeping the computer beyond 30 days,
> the Hills accepted Gateway's offer,
> including the arbitration clause.

Id. at 1149-50 (citation omitted).  Under Hill, it is plain that

Falbe's conduct, i.e., keeping the computer beyond 30 days,

manifested his assent to the Terms and Conditions, and created a

valid and enforceable agreement to arbitrate.

Falbe attempts to get out from under Hill by stating that

the Court acknowledged that it might have reached a different

result had plaintiffs (like Falbe) been required to pay shipping

charges before returning their computer.  Falbe misreads Hill.

What the Court did say is that if plaintiffs had had no notice that

any terms would be included with the computer, and were then

dissuaded from returning it by the expense of shipping, that

scenario would present an "interesting question": would a remedy be

limited to those shipping charges?  Id. at 1150.  The Court,

quickly concluded however that the question was not before it, and

declined to pursue it further – given defendant's advertising of

certain terms (warranty and customer support) and the availability of all terms prior to purchasing, either by requesting a copy or visiting the vendor's website, plaintiffs had sufficient notice that "the carton would include *some* important terms, and [plaintiffs] did not seek to discover these in advance." Id.

So, contrary to Falbe's reading, the Hill Court assumed that plaintiffs *would have* incurred shipping costs. And to the extent Falbe intended to bring his case within the hypothetical actually posed by the Court, he gets no further. Like the defendant in Hill, Dell advertises its service and customer support and its Terms and Conditions are available by contacting Dell directly or by accessing its website. Therefore, like plaintiffs in Hill, Falbe was not without notice that *some* terms would be included with his computer.[8]

Falbe proffers a second argument which need not detain us long. He contends that the Terms and Conditions, and the arbitration provision contained therein, is an unenforceable contract of adhesion because "it was drafted entirely by [Dell]" and because Dell "had superior bargaining power over defendant." (Pl's Resp., p. 4.) Under Texas law, "an adhesion contract [is] a contract in which one party has absolutely no bargaining power or ability to change the contract terms." In re. Media Arts Group,

---

[8]In fact, the Complaint states that Falbe did examine Dell's website prior to placing his telephone order. (See Not. of Removal, Ex. A, Compl., p. 3, ¶¶ 9-10.)

Inc., 116 S.W.3d 900, 911 (Tex. Ct. App. 2003). Under this
definition, the contract between Dell and Falbe does appear to be
one of adhesion; there was no bargaining over the terms. By
Falbe's logic then, once we determine that the contract is
adhesive, it follows, *ipso jure*, that it is unenforceable. This is
not the law. Apart from (or perhaps because of) the fact that
accepting Falbe's argument would render almost all consumer
contracts unenforceable, Texas law is clear that disparate
bargaining power is alone insufficient to render an arbitration
agreement unenforceable. See Holeman v. National Business
Institute, Inc., 94 S.W.3d 91, 100 (Tex. Ct. App. 2002). Instead,
the party seeking to invalidate the agreement must show that the
agreement is either procedurally or substantively unconscionable.
See In re H.E. Butt Grocery Co., 17 S.W.3d 360, 371-72 (Tex. Ct.
App. 2000) (noting that "[a]dhesion contracts are not automatically
unconscionable or void" and upholding arbitration agreement where
"[t]here is no proof that [defendant] hid or misrepresented the
terms of the arbitration agreement or that it made any
misrepresentations regarding arbitration"); Media Arts Group, 116
S.W.3d at 911 ("[A]n adhesion contract is not automatically
unconscionable. . . . [T]he party opposing arbitration must also
present some other evidence of unconscionability."); see also Metro
East Center for Cond. and Health v. Quest Comm. Int'l, Inc., 294
F.3d 924, 926 (7th Cir. 2002) ("[W]e have held that form contracts,

offered on a take-it-or-leave-it basis, are agreements for purposes

of the Arbitration Act.") (<u>citing</u> <u>Hill v. Gateway 2000, Inc.</u>, 105

F.3d 1147 (7th Cir. 1997)). Absent any allegations of

unconscionability beyond mere bargaining inequality, and there are

none, Falbe's argument must fail.[9] In sum, we conclude that Falbe

has entered into a valid and enforceable agreement to arbitrate.

**B.** **<u>Scope of the Arbitration Agreement</u>**

Turning to our second and final inquiry, Falbe argues that

even if the arbitration provision is enforceable, the provision

does not cover the claims presented in his Complaint. The

arbitration provision in the Terms and Conditions compels

arbitration of: "any claim, dispute, or controversy . . . arising

from or relating to this Agreement . . . the relationships which

result from this Agreement . . . Dell's advertising, or any

related purchase." (<u>Def.'s Mot.</u>, <u>Ex. A1</u>, p. 4, ¶ 13.) Each of

Falbe's claims, whether sounding in contract or fraud, arises from

the allegation that Dell misrepresented the procedure for obtaining

a $200 mail-in rebate on his computer purchase. Falbe submits that

---

[9]Parenthetically, we note that Falbe does not cite a single case
- from Texas, Illinois or elsewhere - invalidating an arbitration
clause as an unenforceable contract of adhesion. The lone case Falbe
does cite, <u>Parker v. Am. Family Ins. Co.</u>, 315 Ill.App.3d 431, 734
N.E.2d 83 (3d Dist. 2000), involves "escape hatch" clauses, under
which either party (almost always the defendant) may opt out of a
mandatory arbitration provision if the arbitration award exceeds a
certain amount. The <u>Parker</u> court invalidated an "escape hatch"
clause as contrary to public policy but upheld the remainder of the
arbitration provision as valid and enforceable. <u>Id.</u> at 86. Of
course, the arbitration provision in Dell's Terms and Conditions does
not contain an "escape hatch" clause, so <u>Parker</u> is inapplicable.

because the word "rebate" does not appear in the Terms and Conditions, and alternatively, because the rebate "had nothing to do with the actual product sold," his claims are not within the scope of the arbitration provision. (Pl.'s Resp., p. 6.)

We begin with the oft-cited rule that "any doubts as to whether [a plaintiff's] claims fall within the scope of the agreement must be resolved in favor of arbitration." Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995) (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25). Moreover, "[t]he policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" Marshall, 909 S.W.2d at 899 (citations omitted). Finally, when, as here, the arbitration provision expressly includes "[a]ll disputes, claims or controversies arising from or relating to the contract," the party opposing arbitration is "required to present the most forceful evidence of purpose to exclude his claim from arbitration." In re Conseco Fin. Serv. Corp., 19 S.W.3d 562, 570 (Tex. Ct. App. 2000); see also AutoNation USA Corp. v. LeRoy, 105 S.W.3d 190, 196 (Tex. Ct. App. 2003) (Arbitration language "requiring arbitration of any controversy or claim 'arising out of or relating to' the Purchase Agreement or the breach thereof, is recognized as broad language favoring arbitration."); Sweet Dreams

Unlimited, Inc. v. Dial-A-Mattress Int'l., Ltd., 1 F.3d 639, 642
(7th Cir. 1993) (arbitration provisions stating that they include
all disputes "arising out of" an agreement cover "all disputes
having their origin or genesis in the contract, whether or not they
implicate interpretation or performance of the contract per se").[10]

Against these standards, Falbe's argument borders on the
frivolous. His claims, all of which involve Dell's rebate offer,
clearly "arise from" and "relate to" his purchase contract with
Dell. But for that contract, Falbe would have had no relationship
whatsoever with Dell, and thus no standing to bring a claim
challenging the rebate offer. Put simply, no computer purchase, no
rebate offer. Because all of Falbe's claims fall squarely within
the arbitration provision in the Terms and Conditions, they are
subject to arbitration.

---

[10]The scope, as distinct from the existence, of an agreement to
arbitrate is governed by *both* federal and state law. The Supreme
Court has stated that the FAA has federalized the interpretation of
the scope of arbitration clauses in one important respect. As a
matter of federal law, the existence of an arbitration clause creates
a strong presumption of arbitrability and "any doubts concerning the
scope of arbitrable issues should be resolved in favor of
arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. The Act
does not otherwise displace state contract law, so long as that state
law does not treat arbitration agreements differently than other
contracts. See Doctor's Assocs., Inc., v. Casarotto, 517 U.S. 681,
687-88, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ("States may regulate
contracts, including arbitration clauses, under general contract law
principles and they may invalidate an arbitration clause 'upon such
grounds as exist at law or in equity for the revocation of *any*
contract.' 9 U.S.C. § 2 (emphasis added)."). As to which state law
applies, under the same analysis set out above, we apply the law of
Texas.

## CONCLUSION

For the foregoing reasons, Dell's motion to stay these proceedings and compel arbitration is granted. The parties are hereby ordered to proceed to arbitration in accordance with the arbitration provision in the Terms and Conditions, and further, to notify this court within 21 days of the completion of the arbitration proceedings.

DATE:    July 12, 2004

ENTER:    _____

John F. Grady, United States District Judge